*336 OPINION OF THE COURT
Melvin S. Barasch, J.
In this proceeding pursuant to Business Corporation Law §§ 611 and 619, petitioners Fort Hamilton Development Corp. (Fort Hamilton), Mark P. Madias, and Peter M. Madias (collectively, petitioners) move, by order to show cause, for an order: (1) certifying that petitioners Peter M. Madias and Mark P. Madias, respondents Martin Spencer and James Gallo, and Edward Monahan constitute and were duly elected to the Board of Directors of respondent Bay Ridge Towers, Inc. (BRT) by a majority of the ballots cast at the annual meeting held on May 16, 2001, (2) declaring that the purported results of the election of the Board of Directors of BRT, as announced by respondents Nicholas Gaetani and Maria P. Bernazzani, the Inspectors of Election (the Inspectors of Election), on May 16, 2001 are a nullity based upon the grounds that they refused to permit Fort Hamilton to vote for all five members of the Board of Directors, and that if its votes had been counted, the outcome of the election would have been different, and (3) declaring that all actions which affect the rights of the holders of unsold shares taken on or after May 16, 2001 by respondents Martin Spencer, James Gallo, and Mary Bianchi are ultra vires, a nullity, and of no legal effect. Respondents BRT, Martin Spencer, James Gallo, Mary Bianchi, Nicholas Gaetani, and Maria P. Bernazzani (collectively, respondents) cross-move for an order, pursuant to CPLR 3211 and 404, dismissing the petition.
Respondent BRT is a residential cooperative corporation formed in 1985, which owns and operates a building containing 106 residential apartments, located at 149 Marine Avenue, in Brooklyn, New York. Petitioner Fort Hamilton, along with Nicholas Skarvelis, were the sponsors of the conversion of the apartment building to cooperative ownership. Fort Hamilton is the holder of 32,286 unsold shares of BRT. Such unsold shares constitute 52.48% of the 61,520 shares of BRT. Petitioners Mark P. Madias and Peter M. Madias, shareholders and officers of BRT, were Fort Hamilton’s designated representatives on BRT’s five-member Board of Directors. Respondents Martin Spencer, James Gallo, and Mary Bianchi maintain their residences at the subject building and were the three resident tenant shareholder members of BRT’s Board of Directors. Martin Spencer, the president of BRT, and James Gallo, the secretary/treasurer of BRT, have both served on BRT’s Board of Directors for approximately 16 years. Mary Bianchi, the vice-president of BRT, has served on BRT’s Board of Directors for approximately three years.
*337 At the commencement of an annual shareholders’ meeting held on May 16, 2001 for the purpose of reelecting the Board of Directors of BRT, Fort Hamilton nominated and voted for its two representatives on BRT’s Board of Directors, i.e., Mark P. Madias and Peter M. Madias. Since Fort Hamilton held a majority of the shares of BRT, Mark P. Madias and Peter M. Madias were duly elected to the Board. James Gallo, Mary Bianchi, Martin Spencer, Edward Monahan, and Susan Bucaria were then nominated as the resident tenant shareholder candidates for the Board of Directors of BRT. Nicholas Gaetani and Maria P. Bernazzani, two shareholders unaffiliated with any of the candidates, were appointed as the Inspectors of Election for this meeting, and the shareholders cast their ballots. Fort Hamilton submitted a ballot, attempting to vote its 52.48% shares of BRT for the resident tenant shareholder candidates. The ballots were then counted by the Inspectors of Election. The Inspectors of Election, however, refused to count Fort Hamilton’s votes for these three Board of Directors positions based upon article II, section 2, of BRT’s bylaws, which was part of the offering plan drafted by Fort Hamilton, as the sponsor. Said section provides:
“Respecting any shareholder who owns greater than 50% of the shares of the Corporation; such shareholder agrees not to elect a majority of the Board of Directors at the earlier of (i) five(5) years after the Corporation acquires the Property or (ii) at such time that the shareholder ceases to own greater than 50% of the shares of the Corporation.”
The Inspectors of Election found that, pursuant to this section, Fort Hamilton, as the holder of greater than 50% of BRT’s shares, could only use its votes to elect two of the five Board member positions, and that, therefore, it was not entitled to vote for the three resident tenant shareholder candidates. Upon excluding the votes of Fort Hamilton, the Inspectors of Election announced that James Gallo, Martin Spencer, and Mary Bianchi were the three tenant shareholders elected to BRT’s Board of Directors. If the votes of Fort Hamilton had been counted, James Gallo and Martin Spencer would still have been elected, but Edward Monahan would have been elected instead of Mary Bianchi. Petitioners assert that subsequent to the election, Martin Spencer, James Gallo, and Mary Bianchi, in their capacity as BRT’s directors, have taken steps to amend the house rules, and that such proposed amendment improperly violates the proprietary lease.
*338 Consequently, petitioners brought this petition, seeking a judgment declaring the results of the election of the Board of Directors of BRT, as announced by the Inspectors of Election on May 16, 2001, a nullity due to their refusal to count Port Hamilton’s votes, certifying Peter M. Madias, Mark P. Madias, Martin Spencer, James Gallo, and Edward Monahan as the duly elected members, of BRT’s Board of Directors, declaring actions taken by Martin Spencer, James Gallo, and Mary Bianchi ultra vires, and granting them a temporary restraining order and preliminary injunction restraining Martin Spencer, James Gallo, and Mary Bianchi from purporting to act as directors of BRT. A temporary restraining order, as requested in petitioners’ order to show cause, was initially granted, and was later vacated in its entirety by this court’s order dated August 23, 2001.
In support of their petition, petitioners rely upon Matter of Park Briar Assoc. v Park Briar Owners (182 AD2d 685). They point out that in that case, the Appellate Division, Second Department, held that the cooperative corporation therein could not prevent a petitioner, which was the sponsor of the cooperative corporation, from voting for any director unless it was shown that (at 686) “the director in question [wa]s on the petitioner’s own slate or receive [d] a salary or other remuneration from it.” Petitioners claim that since it is undisputed that none of the tenant shareholder candidates for BRT’s Board of Directors were affiliated with or in any way nominated or designated by Fort Hamilton, it cannot be said to have exercised voting control over BRT’s Board by voting its shares.
Petitioners’ reliance upon Park Briar (supra, 182 AD2d at 686-687), however, is misplaced because that case did not involve a restriction contained in the cooperative corporation’s bylaws on the right of the sponsor to vote. Rather, that case involved only the application of the regulation of the Attorney General, set forth in 13 NYCRR 18.3 (v) (5) (i), which provides that the holder of unsold shares “must agree not to exercise voting control of the board of directors for more than five years from closing, or whenever the unsold shares constitute less than 50 percent of the shares, whichever is sooner” (emphasis supplied). The Appellate Division, Second Department, in Park Briar (supra, 182 AD2d at 687), in construing this regulation, found that it only restricted the sponsor’s nomination or designation of Board members, but not its ability to vote for more than a majority of the Board members.
Park Briar (supra, 182 AD2d at 687) is distinguishable from the case at bar since, here, the Inspectors of Election, in refus *339 ing to count Fort Hamilton’s votes for the tenant shareholder candidates, did not rely upon the Attorney General’s regulation, but upon the restriction contained in article II, section 2, of BRT’s bylaws, which, as noted above, did not refer to the sponsor’s general exercise of voting control, or its nomination or designation of Board members, but expressly referred to its “agree [ment] not to elect a majority of the Board of Directors” (emphasis supplied). Significantly, in Park Briar (supra, 182 AD2d at 687), the Appellate Division, Second Department, in making its ruling, specifically pointed out that in that case, existing restrictions on the petitioner’s right to vote, which, as in the case at bar, were contained in the cooperative corporation’s bylaws, were not applicable therein because those restrictions only applied if the petitioner held more than 50% of the outstanding shares of the cooperative corporation, and the petitioner therein held less than 50% of the shares (see also, Matter of Board of Directors of Exec. House Owners v E.H. Assoc., 248 AD2d 530, 533).
Petitioners’ reliance upon the decision of the Appellate Division, First Department, in Rego Park Gardens Assoc. v Rego Park Gardens Owners (174 AD2d 337) is similarly misplaced. In that case, the restriction at issue contained in the cooperative corporation’s offering plan, unlike the one in the case at bar, did not specifically refer to the sponsor’s agreement not to elect a majority of the Board of Directors, but only to such sponsor’s general exercise of voting control, and provided that such voting control could not be exercised after the sponsor owned less than 50% of the cooperative corporation’s outstanding shares (id. at 338).
Moreover, subsequent to the decisions in Park Briar (supra, 182 AD2d at 686-687) and Rego Park (supra, 174 AD2d at 338-339), the Appellate Division, Second Department, in Matter of Visutton Assoc. v Terrace Owners (254 AD2d 295, 296), did not construe those decisions as allowing a sponsor to elect a majority of a cooperative corporation’s Board of Directors so long as the Board was not controlled by affiliates of the sponsor where there was a provision, which, like the one in the case at bar, restricted the voting rights of a sponsor by prohibiting it from voting its unsold shares for more than one less than the majority of directors to be elected. The Appellate Division, Second Department, in Visutton (supra, 254 AD2d at 296), held such a provision to be enforceable and upheld the Inspector of Elections’ refusal to count the sponsor’s votes.
Additionally, in Matter of Flagg Ct. Realty Co. v Flagg Ct. Owners Corp. (230 AD2d 740, 740-741), the Appellate Division, *340 Second Department, similarly found that the election at issue in that case was conducted in violation of the offering plan and bylaws of the respondent cooperative corporation due to the restriction contained therein, which provided that the sponsor or individuals who owned unsold shares would not “elect a majority of the Board of Directors, even though the number of shares owned by them would enable them to do so.” Indeed, the same argument made by petitioners that based upon the decision in Park Briar (supra, 182 AD2d at 686), a sponsor or holder of unsold shares could not be restricted to voting for only the sponsor affiliated directors, was also made by the petitioners therein, and was expressly discussed and rejected by the lower court’s decision, which was upheld by the Appellate Division, Second Department (see, Matter of Flagg Ct. Realty Co. v Flagg Ct. Owners Corp., Sup Ct, Kings County, Held, J., Index No. 18594/95).
Petitioners’ attempt to distinguish Visutton (supra, 254 AD2d at 296-297) from the instant case is unavailing. The restrictive provision at issue in Visutton (supra, 254 AD2d at 296) was virtually the same as the one in the present case. Additionally, petitioners’ argument that Flagg (supra, 230 AD2d at 740-741) is distinguishable from the case at bar merely because the restrictive provision therein stated that the sponsor shall have the right to elect three of seven directors and the provision here does not specifically refer to the number of directors Fort Hamilton may elect, is without merit. The offering plan in Flagg (supra, 230 AD2d at 740-741) stated that the sponsor or holder of unsold shares “will not elect a majority of the Board of Directors” and, here, article II, section 2, of BRT’s bylaws similarly states that a shareholder of more than 50% of BRT’s shares (i.e., the sponsor and holder of unsold shares) cannot “elect a majority of the Board of Directors.” Thus, such provisions are indistinguishable.
Petitioners also argue that the Inspectors of Election exceeded their authority and violated Business Corporation Law § 612 (a). Business Corporation Law § 612 (a) provides that “[e]very shareholder of record shall be entitled at every meeting of shareholders to one vote for every share standing in his name on the record of shareholders, unless otherwise provided in the certificate of incorporation.” They contend that under this section, the subject restriction in article II, section 2, of BRT’s bylaws is unenforceable since it is not contained in BRT’s certificate of incorporation.
The court rejects this argument. While a restriction depriving a shareholder of its right to vote all of its shares can only *341 be accomplished through a provision in the certificate of incorporation (see, Business Corporation Law § 612 [a]; Matter of Madison v Striggles, 228 AD2d 170; Yu v Linton, 68 AD2d 856), the Appellate Division, Second Department, in Visutton (supra, 254 AD2d at 296), held that a provision restricting a sponsor from voting its unsold shares for more than one less than the majority of directors to be elected is not required to be set forth in the certificate of incorporation. This is because such a provision “do[es] not prohibit the sponsor from voting all its shares; [it] merely bar[s] the sponsor from obtaining control of the board under certain circumstances” (id.).
Petitioners further contend that the Inspectors of Election’s refusal to count the ballots cast by Fort Hamilton while counting the ballots cast by Marine Properties, LLC, which was also a holder of unsold shares, was arbitrary, capricious, and unlawful. Such contention is devoid of merit. While it is undisputed that Fort Hamilton owns greater than 50% of the shares of BRT, Marine Properties, LLC owns only 4.39% of the shares of BRT, and has never held 50% or more of the shares of BRT. Therefore, since the subject bylaw only applies to any “shareholder who owns greater than 50% of the shares of [BRT],” it is plainly inapplicable to Marine Properties, LLC.
Thus, inasmuch as the restriction on Fort Hamilton’s right to vote contained in article II, section 2, of BRT’s bylaws was applicable, the refusal by the Inspectors of Election to count Fort Hamilton’s votes for the resident tenant shareholder positions on BRT’s Board of Directors was proper (see, Matter of Visutton Assoc. v Terrace Owners, supra, 254 AD2d at 296; Sherbansky v 117 W. 81st St. Tenants Corp., 238 AD2d 246, 247; Matter of Flagg Ct. Realty Co. v Flagg Ct. Owners Corp., supra, 230 AD2d at 740-741).
The court now turns to petitioners’ remaining contention regarding the actions taken by Martin Spencer, James Gallo, and Mary Bianchi regarding the house rule amendment. The court notes that while the parties dispute whether this amendment has already been adopted, such house rule amendment merely states that before approval of the installation of laundry equipment in an apartment is given, an opinion of a licensed plumber that such installation would not adversely affect the plumbing for other apartments and the building as a whole would be required. It, therefore, is only a clarification of an existing rule to safeguard the operation of the building’s plumbing system, which is for the benefit and protection of the building and its residents, and does not threaten any legitimate *342 interest of petitioners or violate the proprietary lease. Consequently, the relief sought by petitioners in their instant application must be denied, and respondents’ cross motion for an order dismissing the petition must be granted (see CPLR 404 [a]; 3211).
Accordingly, petitioners’ motion is hereby denied, and respondents’ cross motion to dismiss the petition is hereby granted.